## No. 10,365.

### THE STATE OF LOUISIANA VS. BOB WRIGHT ET ALS.

When the district judge finds it necessary to prolong the term of his court to transact criminal business, and a jury has been drawn for only two weeks of the term, under the provisions of Act 44 of 1877, he has discretionary power to order the jury commissioners to draw a jury for the third week.

When the venire list contains names who have been summoned, but not the jurors who were drawn, this is no ground for setting aside the venire.

The accused who alleges a correct copy of the venire has not been served on him must prove it.

The trial judge is not required to give as a special charge of that which is fully covered in his general charge to the jury.

When several parties are jointly indicted for the same offense, the testimony of the wife of one of the defendants is admissible against the co-defendants. The testimony, however, cannot be used against the husband, and the judge should instruct the jury to this effect.

A PPEAL from the Third District Court, Parish of Claiborne. *Barksdale*, J.

---

*Walter H. Rogers*, Attorney General, for the State, Appellee.

---

*J. R. Phipps & C. W. Seals; J. W. Holbert, J. E. Everett* and *J. E. Moore* for Defendants and Appellants.

---

The opinion of the Court was delivered by

McENERY, J. The defendants, Bob Wright, Tom Bugg, Bill Ware and Virg. White, were indicted for murder. Bob Wright was convicted

of murder; Tom Bugg was found guilty without capital pusishment; Bill Ware guilty of manslaughter, and there was a mistrial as to Virg. White.

Court opened on February 25, 1889, and the accused were arraigned and pleaded not guilty, and their trial fixed for March 11th following.

A jury had been summoned for the first two weeks of the term, and the judge *a quo*, assigning as a reason for his order to draw and summon a jury for the third week, says that he knew from the number of cases on the criminal docket, the number of persons charged with crime in the parish jail and the number of bills against them filed by the grand jury, that criminal business before the court could not be completed in two weeks.

The defendants allege, in their motion to quash this venire, drawn in pursuance of the order of the judge, that it was not drawn fifty days before the term of court, and was not drawn until the term had commenced, and after the arraignment of the accused.

The order of the judge for the additional jurors was made in pursuance of Act 44 of 1887, Sec. 7. The object of the act was to provide for the possibility of the need of additional jurors, which could not have been foreseen at the opening of the court. The judge is vested with discretionary power to provide for this emergency. He found that it would be necessary, in order to transact the business before the court, to prolong the term, and as the jury had been only drawn for a two weeks' term, it was essential to have a jury for the third week, and the jury commissioner was ordered to draw a jury for that week.

The judge was clearly authorized to issue the order.

It is a matter of public policy which requires the drawing of the jury fifty days before the commencement of the term.

The right to set aside a jury drawn less than fifty days before the term commences is one in which the public, as well as the accused, is interested. It is a right not personal to the accused, but one which he has in common with others interested, and with the public. The judge can set aside the venire on his own motion, or the district attorney can file a motion to quash. The personal right which affects the accused is the right to have a list of the venire served on him two entire days before the trial. As a matter of public policy the Legislature saw fit to authorize the judge, during the term, when he deemed it necessary, to order the drawing of additional jurors. And when these additional jurors were drawn, the accused has the right to have served on him two entire days before his trial, a list of the jurors who are to pass on his case.

The defendants allege that no correct list of the venire was served on them, and that the names of several on the venire were not the correct names of the persons intended to be drawn. If this is a fact, they were not jurors and not summoned.

The absence from the list of jurors who were drawn and not summoned is no ground to set aside the venire.

Defendants also complain that in the copies served on them a juror's name was written Dan Thornton, and on the venire it was written Dave Thornton. The statement of the judge shows that the abbreviation was not legibly written, and from his statement we conclude that the abbreviation may have been Dan. The list was certified to as correct, and the accused have failed to show that it was not a correct copy. No testimony was offered on this point except the venire and the copy.

There are several exceptions to the ruling of the judge refusing the five special charges to the jury. The judge's general charge is in the record, and the special charges asked are fully covered in the general charge.

The defendants select this sentence from the charge : " You sometimes hear jurors say 'I was satisfied the defendant did the act but they didn't prove it on him,' and allege this was calculated to prejudice the minds of the jury against them."

This was said in connection with the charge as to the existence of a reasonable doubt in the minds of the jury, and the judge's language is as follows :

" It should not be a vague, flimsy, shadowy doubt. We sometimes hear jurors say, ' I was satisfied the defendant did the act, but they did not prove it on him.' Now, I charge you that if the evidence satisfies you of the existence of those facts necessary to constitute guilt, their guilt is proven, and the reasonable doubt spoken of by the law-writers cannot exist, because doubt of the existence of a fact is inconsistent with that condition the mind is in when it is satisfied of the existence of that fact." In this charge there was nothing said that would predjudice the minds of the jury against the defendants.

Lula Wright, wife of defendant Bob Wright, was sworn as a witness. Her testimony was objected to by all the defendants, because as the wife of Bob Wright, she was incompetent as a witness, and as evidence had been introduced tending to show a conspiracy among the defendants, her evidence against one co-conspirator would necessarily be evidence against Bob Wright as tending to establish his connection with the conspiracy. The defendants were jointly indicted. There may have been evidence of the kind indicated, but because it would tend to

show the connection of the other defendants, it would not necessarily implicate Bob Wright, the husband of the witness. At the time the witness was sworn, the jury was instructed by the judge that her testimony was not offered, and must not be considered, for or against her husband, Bob Wright. This instruction to the jury was repeated in the charge given to the jury on the close of the argument.

The wife's testimony was introduced against the other defendants, not against the husband, and under the instructions given to the jury it could have no bearing on the husband's case. There was no error in admitting her testimony. State vs. Adams, 40 Ann. 213.

There is no reason assigned in any of defendants' exceptions and motions why the verdict and sentence should be disturbed.

Judgment affirmed.